The CHIEF JUSTICE
 

 delivered the opinion of the court.
 

 It is not disputed that the cargo consisted of Texan products. Prior to shipment, then, it was enemy property.
 

 The manifest of the cargo, found on the schooner when captured, shows that five hundred and ninety-seven bales of cotton, valued at thirty-one thousand dollars, and two hundred and ninety-one hides, valued at fifty-eight dollars and
 
 *488
 
 twenty cents, were shipped at Sabine, in May, 1862, “by the Andromeda, Culmell,” and consigned to Charles Caro & Co., at Havana. Of this cargo, Ashby, the master, says that ninety bales of cotton belonged to himself, and one hundred to Culmell, and that the remainder of the cotton, four hundred and seven bales, and all the hides, belonged to Caro & Co., who, he says, are neutral merchants, residing in Havana. Culmell says the same. Culmell was a rebel enemy, residing .in Texas. Ashby left New Orleans in the Andromeda soon after the breaking out of the war, and from that time to the capture was in command of her, engaged in the Gulf trade, and the greater portion of the time with the rebel territory. lie says of himself, that he was born in New York; lives in Louisiana; owes allegiance to Louisiana and to the Confederate States, and is not a citizen of the United States. His acts and declarations prove him a rebel enemy. There can be no question, therefore, that the cotton, when it became the property of Ashby or Culmell, or both, was enemy property. There is nothing in the record to support the statements of those persons, as to the ownership of Caro & Co. On the contrary, there is much to discredit them. There is nothing in the manifest wdiich shows any distinction of ownership; and it is proved that a part belonged to Ashby and Culmell. The cotton and hides appear to have been purchased with the proceeds of the merchandise brought by the Andromeda to Sabine; and there is nothing before us, except the bare statement of Ashby, that the schooner was chartered by them for Matamoras, which affords the slightest indication that Caro
 
 &
 
 Co. had any interest- whatever in that merchandise; while the account of sales is not with them, but with “schooner Andromeda and owners.”
 

 Besides these facts, another circumstance is of much weight. It appears from the record that Caro & Co., though residing at Havana, only a hundred miles from Key West, where the District Court was held, never appeared there during the proceedings in prize, never manifested any concern in the result beyond the mere signing of a power of
 
 *489
 
 attorney, authorizing Ashby to claim in their name. The court below very properly gave much consideration to this circumstance. In connection" with the other facts mentioned, we think it fully warranted the conclusion, that no part of the cargo belonged to Caro & Co., and that the original enemy character of the whole of it remained unchanged at the time of capture.
 

 The enemy character of the vessel is quite as clearly proved. She was originally the property of Ashby, a confessed rebel enemy, and, according to his statements,. of others who, in the absence of any allegation to the contrary, must be presumed to have been, also, rebel enemies. By Ashby she was sold, as lie asserts, to one Alleyn, said to have been a neutral residing in New Oilcans. But' there was no change of possession. Ashby remained in full and absolute control, both of her use and disposal, and afterwards sold her, under the asserted authority of Alleyn, to one Watson, alleged to have been a neutral residing in Havana. Still, however, there was no change of possession, control, or employment. There is not the slightest evidence that-either of the alleged sales was real,- except the unsupported statement of Ashby. That statement under the eircum-' stances can carry no conviction with it.
 

 The condemnation both of vessel and cargo seem to us, therefore, well warranted.
 

 Were there any doubt, it would be removed by the de-' struction of papers proved to have been committed both by Ashby and Culmell, the real owners, as we think, of the schooner and her lading. Monsell, the steward, states that “ after the vessel was hove'to, and before the officer came aboard from the Pursuit,” Culmell gave him a package of papers, which he believed to be newspapers, and told him to throw them overboard, which was done. He says, that Ashby and Culmell were in the cabin together when this direction was given. Ashby admits that the charter-party of the voyage was destroyed before the capture, and that some papers were thrown overboard, he did not know what. Culmell confesses that the invoices and bills of lading of the
 
 *490
 
 portion of the cargo owned by himself, were thrown overboard. Now, when it is remembered that the only bill of lading in the record describes all the cotton as shipped by Edmonson & Culmell, the significance of this confession becomes manifest; for if the bill of lading destroyed was, as it must have been, one of three of like tenor and date with the one found by the captors, then, if this statement be true, all the cotton was owned by Culmell: If, on the other hand, the statement be false, and the papers destroyed were other than as represented, then their destruction and the destruction of the charter-party authorize, under the circumstances, an absolute inference of enemy property, against both vessel and cargo.
 

 Vé think the proof that the Andromeda and her cargo were liable to capture and condemnation for breach of blockade, equally clear; but, as we do not place our decision on that ground, we refrain from any remarks upon that aspect of the case.
 

 No objection was made in argument to the sufficiency of the libel in the District Court. It would be enough to say of this objection, that the libel shows a case of prize, and that is sufficient for jurisdiction. 'All other exceptions are too late here. But the libel is beyond all exception. The rule is, that a libel in pi’ize must allege generally the fact of capture as prize of war,' and the libel in the record is in conformity with this rule.
 

 The decree of the District Court must be affirmed.
 

 NELSON, J.
 

 The proofs in the case, I think, fairly lead to the conclusion, that Ashby, the master of the Andromeda, was the real owner of the vessel, and that the sales' by himself and others, in Mayj 1861, at New Orleans, to Alleyn, and by himself as attorney, for Alleyn to Watson, at Havana, in March, 1862, were, colorable; and, if Ashby was a resident and inhabitant of New Orleans, at the time of the capture of that port and city by our forces, on the last days of April, 1862, as seems to he assumed, there would he ground for claiming that he was entitled to the benefit and
 
 *491
 
 protection of General Butler’s proclamation of the 1st of May following; and, also, to the effect of that capture upon the status and property of the inhabitants of the captured city.
 
 *
 

 The view I have taken of the proofs in the case, do not involve these questions.
 

 Ashby left the city of New Orleans in this vessel soon after the breaking out of the war, and before the establishment of the blockade, and has never returned to it. During all this time and down to the seizure of the vessel, 26th of May, 1862, ho has been in command of it, and engaged in the Gulf trade; and the greater portion of the time with the rebel territory. In answer to the first interrogatory, in
 
 pre-paratorio,
 
 he says, “that he ivas born in New York; lie now lives in Louisiana, and owes allegiance to Louisiana and the Confederate States; is not a citizen of the United States.” In answer to the fourth interrogatory, under an order allowing further proofs, he says that he left New Orleans with the vessel anticipating a. blockade, that she might not'become useless property, and that he did not expect to communicate with that city while the blockade continued. The proofs, as we have seen, show how he has been engaged during all this period.
 

 On the above ground, I agree that the vessel was properly condemned in the court below, as enemy’s property; and, also, the cargo, which the court have adjudged belonged to him.
 

 Decree aeeirmed.
 

 *
 

 See
 
 supra,
 
 p. 263 .The Venice; also, TheBaigorry; precéding case.— Ref.